Opinion by
 

 Rhodes, P. J.,
 

 This is an appeal from an order of a Judge of the Court of Quarter Sessions of Philadelphia County
 
 [1]
 
 granting a writ of habeas corpus and discharging the relator. Under an indictment charging robbery, burglary, larceny, and receiving stolen goods relator was tried and found guilty only on the charge of receiving stolen goods. His conviction on June 24, 1948, followed a three-day trial before Judge Milner and a jury, at which relator was represented by experienced trial counsel. Immediately following his conviction, but before sentence, relator, by his counsel, filed a motion for a new trial, and he was released on bail. On November 10, 1948, his motion for a new trial was withdrawn and
 
 *416
 
 he was sentenced to two and one-half years in the Philadelphia County Prison. Approximately four months later, or on March 11, 1949, relator filed his petition for a writ of habeas corpus in the Court of Quarter Sessions of Philadelphia County alleging therein that his previous conviction and sentence in the same court were null and void by reason of violation of fundamental constitutional rights. His petition asserted such violation consisted of the following: (1) That he was illegally brought into the Commonwealth of Pennsylvania from a race track in the State of Maryland by detectives from the Philadelphia Bureau of Police; (2) that he was illegally detained by the police in Philadelphia for forty-four hours prior to a formal hearing before a magistrate. Although the strict rules of pleading do not apply to petitions for writs of habeas corpus, it is significant that his petition did not mention or allege that the confession, obtained from relator during the early part of the detention and used against him at the trial, was coerced. A responsive answer was filed by the District Attorney of Philadelphia County denying that relator was brought from Maryland by force, but alleging that he came voluntarily, and signed a voluntary confession admitting participation with one Hallowell in a number of crimes.
 

 Judge Carroll, sitting in the Court of Quarter Sessions, appointed counsel for relator in the habeas corpus proceeding. Thereafter hearings were held on May 11, 1949, and May 23, 1949, and testimony taken on the issues raised by the petition and answer. On June 9, 1949, Judge Carroll filed an extensive opinion. By final order on June 10, 1949, he discharged the relator on the ground that the trial court had lost jurisdiction, relator’s fundamental constitutional rights having been violated in that (1) he was illegally and in violation of extradition laws brought from the State of Maryland to Philadelphia, and (2) a confession used against him at the
 
 *417
 
 trial was not voluntarily given but coercively obtained by tbe police during tbe forty-four hour detention.
 

 Under recent decisions of the United States Supreme Court, the line of demarcation is not clear between cases in which, on review of a previous criminal conviction either by habeas corpus or appeal, a prisoner’s fundamental constitutional rights have been held violated and those cases in which such rights have been held not to have been violated. This may result from the fact that denial of due process, as applied to a criminal trial, must be described in general terms, that is, the failure to observe that fundamental fairness essential to the very concept of justice.
 
 Lisenba v. California,
 
 314 U. S. 219, 236, 62 S. Ct. 280, 86 L. Ed. 166,180. Obviously, the Due Process Clause is not susceptible to reduction to a mathematical formula.
 
 Betts v. Brady,
 
 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595;
 
 Lyons v. Oklahoma,
 
 322 U. S. 596, 602, 64 S. Ct. 1208, 88 L. Ed. 1481;
 
 Townsend v. Burke,
 
 334 U. S. 736, 739, 68 S. Ct. 1252, 92 L. Ed. 1690;
 
 Gills v. Burke,
 
 337 U. S. 773, 69 S. Ct. 1247, 93 L. Ed. 1343, 1348. However, there are certain fundamental principles applicable to the review on habeas corpus of criminal convictions and sentences. As Mr. Justice Douglas stated in
 
 Sunal v. Large,
 
 332 U. S. 174, 182, 67 S. Ct. 1588, 91 L. Ed. 1982, 1989: “If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by habeas corpus, litigation in these criminal cases will be interminable.” “In Commonwealth ex rel. McGlinn v. Smith, 344 Pa. 41, 24 A. 2d 1, we [the Supreme Court] said: ‘. . . that “The writ of habeas corpus can never be used as a substitute for an appeal. . . . The regularity of proceedings is not to be attacked in this way. [and that] “The writ of habeas corpus should be allowed only when the court or judge is satisfied that the ‘party hath probable cause to be delivered’ ”: 3 Blackstone 132, [and that] . .. “A judgment cannot be lightly set aside by collateral
 
 *418
 
 attack even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a presumption of regularity”: Johnson v. Zerbst, 304 U. S. 458, [and that] . . . The remedy of habeas corpus being an extraordinary one, it can be successfully invoked only in exceptional cases, where there is a “peculiar and pressing need for it.” In Goto v. Lane, 265 U. S. 393, 401, the Supreme Court of the United States in an opinion by Justice Van Devanter said: “The remedy is an extraordinary one, out of the usual course, and involves a collateral attack on the process or judgment constituting the basis of the detention. The instances in which it is granted, when the law had provided another remedy in regular course, are exceptional and usually confined to situations where there is peculiar and pressing need for it or where the process or judgment under which the prisoner is held is wholly void” ’ ”:
 
 Com. ex rel. Smith v. Ashe,
 
 364 Pa. 93, 101, 71 A. 2d 107, 111.
 

 But where relator shows a conviction and judgment rendered in violation of the Fourteenth Amendment to the Constitution of the United States, such judgment is subject to collateral attack and may be set aside upon habeas corpus.
 
 Johnson v. Zerbst,
 
 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461;
 
 Walker v. Johnston,
 
 312 U. S. 275, 61 S. Ct. 574, 85 L. Ed. 830;
 
 Smith v. O’Grady,
 
 312 U. S. 329, 334, 61 S. Ct. 572, 85 L. Ed. 859;
 
 Townsend v. Burke,
 
 supra, 334 U. S. 736, 68 S. Ct. 1252, 92 L. Ed. 1690;
 
 Gibbs v. Burke,
 
 supra, 337 U. S. 773, 69 S. Ct. 1247, 93 L. Ed. 1343. A relator has the burden of establishing circumstances amounting to a denial of due process.
 
 Walker v. Johnston,
 
 supra, 312 U. S. 275, 61 S. Ct. 574, 85 L. Ed. 830, 836.
 

 We are of the opinion that relator failed to show in the court below on this habeas corpus proceeding any violation of fundamental constitutional rights in his ar
 
 *419
 
 rest, trial, conviction, and sentence on the criminal charge; that there was no denial of due process; and that his conviction by the jury was conclusive of all questions which he attempts to raise on habeas corpus.
 

 Although our review of an order of a lower court in a habeas corpus proceeding is limited, we may examine the evidence sent up with the record to test the right of the court to make the order complained of; we do not weigh conflicting evidence, but we determine whether the order appealed from is supported by any evidence, and whether the court had jurisdiction to do the act complained of or exceeded its legal discretion.
 
 Com. ex rel. Mattox v. Superintendent of County
 
 Prison, 152 Pa. Superior Ct. 167, 170, 171, 31 A. 2d 576;
 
 Com. ex rel. Johnson v. Dye,
 
 159 Pa. Superior Ct. 542, 548, 49 A. 2d 195;
 
 Com. ex rel. Mills v. Baldi,
 
 166 Pa. Superior Ct. 321, 70 A. 2d 439; Sadler, Criminal Procedure in Pennsylvania, 2nd Ed., Sec. 194, pp. 232, 233. However, the ultimate conclusions of law to be drawn from given facts are matters for an appellate court. “Especially in cases arising under the Due Process Clause it is important to distinguish between issues of fact that are here foreclosed and issues which, though cast in the form of determinations of fact, are the very issues to review which this Court sits”:
 
 Watts v. Indiana,
 
 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1434, 1436.
 

 The record before us includes the complete record of the relator’s trial and conviction on the criminal charge as well as the testimony taken before Judge Carroll on the petition for writ of habeas corpus.
 

 It is undisputed that on April 23, 1947, one William Hallowell shot and killed two policemen in the City of Philadelphia. Hallowell at the time was severely wounded. Hallowell implicated relator in numerous robberies. On April 24, 1947, three detectives from the Philadelphia police force visited the race track at Havre de Grace, Maryland, but were unable to find relator. Two of these detectives returned to the Maryland track
 
 *420
 
 the next day, April 25, 1947, about 1 p.m., and found relator there in company with one Hannon. The testimony of relator and the two detectives as to what occurred immediately thereafter is conflicting in some respects. The detectives testified they did not “arrest” relator, but that he voluntarily agreed to return with them to Philadelphia. Leaving the race track the detectives stopped at the office of the local race track police. Upon relator’s suggestion they stopped at a gas station on the outskirts of Havre de Grace from which relator telephoned to his attorney in Philadelphia. Thereafter relator and the detectives stopped at a restaurant in Delaware, and relator, at his own instance, paid for their meals. Relator testified he was handcuffed and taken from Maryland to Philadelphia, Pennsylvania, in the detectives’ car, under compulsion; that, while he managed to get to a telephone at a gas station and call his lawyer in Philadelphia, he was interrupted by the detectives, one of whom “did the rest of the talking to the lawyer.”
 

 The detectives and relator returned to Philadelphia, arriving at the police station or Sixth Detective Headquarters, at Twenty-second Street and Hunting Park Avenue, in the early evening about eight o’clock. Relator was then taken by the detectives to confront Hailowell who, having been seriously wounded, was in the Germantown Hospital. There, in the presence of police officers and a stenographer, Hailowell told how relator had been involved in several robberies. Relator stood mute. From the Germantown Hospital relator was returned to the police station and formally placed under arrest. At 8:25 that same evening relator signed a Avritten confession, taken by the police stenographer in question and answer form, admitting his participation in several robberies with Hailowell, and telling how they disposed of the proceeds. Relator’s father and two brothers visited him in the station house immediately
 
 *421
 
 after lie had signed the confession, and the same evening his attorney, whom he had called from Maryland, interviewed relator. Relator was kept in custody until April 27th, when he was taken before a magistrate, given a hearing, and held on charges of robbery, burglary, larceny, and receiving stolen goods. He was released on bail to await trial.
 

 On the question of relator’s apprehension in Maryland, the court below found that relator was “illegally arrested by two Philadelphia detectives on April 25, 1947, at Havre de Grace race track, Maryland, and brought by force to the police station at 22nd and Hunting Park Avenue, Philadelphia, ... in violation of the extradition laws.” There is no proof that relator was actually arrested in Maryland, and there is no testimony that he was returned to Philadelphia by force excepting his own which is contradicted by the police officers and all the circumstances. His testimony is unsupported by his own witnesses, and Judge Carroll stated that he was untruthful.
 
 [2]
 
 Assuming that relator was seized in Maryland and returned to Philadelphia, this did not constitute a violation of relator’s rights under the Due Process Clause. A prisoner who is regularly indicted and tried under the laws of a state where the crime was committed is not deprived of due process of law under the Fourteenth Amendment by the manner in which he is brought from another jurisdiction.
 
 Pettibone v. Nichols,
 
 203 U. S. 192, 27 S. Ct. 111, 51 L. Ed. 148;
 
 Ker v. Illinois,
 
 119 U. S. 436, 7 S. Ct. 225, 30 L. Ed. 421;
 
 Mahon v. Justice,
 
 127 U. S. 700, 8 S. Ct. 1204, 32 L. Ed. 283;
 
 McMahan v. Hunter,
 
 150 F. 2d 498, certiorari denied, 326 U. S. 783, 66 8. Ct. 332, 90 L. Ed. 475;
 
 Chandler v. United
 
 
 *422
 

 States,
 
 171 F. 2d 921, 934, certiorari denied, 336 U. S. 918, 68 S. Ct. 640, 93 L. Ed. 527;
 
 Jackson v. Olson,
 
 146 Neb. 885, 22 N. W. 2d 124, 165 A. L. R.
 
 932; Dows’ Case,
 
 18 Pa. 37;
 
 Com. v. Kenney,
 
 80 Pa. Superior Ct. 418, 419; 22 Am. Jur., Extradition, Sec. 65; Annotation, 165 A. L. R. 947-967.
 

 Relator contends that the alleged action of the police officers in removing him by force and without authority from Maryland to Pennsylvania violated the Uniform Criminal Extradition Act then in force in Maryland (Code, 1939, Article NLI, Sec. 13-39) and in Pennsylvania (Act of July 8, 1941, P. L. 288, 19 P.S. Sec. 191.1 et seq.). The Uniform Criminal Extradition Acts have no application here. Granting that relator was forcibly brought from Maryland to Pennsylvania, it is clear, under the authorities cited, that such action would not constitute a violation of relator’s rights, cognizable in this proceeding, under the Constitution of the United States (Due Process Clause of the Fourteenth Amendment or Article IV, Sec. 2, and 18 U. S. C. A. Sec. 662, implementing that section relating to extradition), or under the uniform state laws relating to criminal extradition. Relator did not attempt to question, by habeas corpus action brought in Maryland, his removal or the authority of the detectives to take him out of the State of Maryland. Cf.
 
 Application of Robinson,
 
 150 Neb. 443, 34 N. W. 2d 887;
 
 Picking v. Pennsylvania R. Co.,
 
 151 F. 2d 240, rehearing denied, 152 F. 2d 753;
 
 State ex rel. Eberle v. Warden of Maryland
 
 Penitentiary, -Md. -, 65 A. 2d 291. This question was raised for the first time in this habeas corpus proceeding.
 

 The court below discussed at some length the question of whether the confession of relator, used against him at the trial, was voluntary or coerced. At the hearing on relator’s habeas corpus petition in the court below, as at the trial, relator stated in vague generalization that he was “beaten” by the police immediately prior to his
 
 *423
 
 signing the confession. Likewise relator’s father and two brothers and relator’s attorney at that time testified at the hearing on the petition, as they had at the trial, that when they saw relator after he had signed the confession his face ivas flushed and he had a bruise on his neck. Against this there was the testimony of the police officers, alike at the hearing on the petition and at the trial, that the confession was obtained without coercion and was entirely voluntary. The court below made no direct finding of fact on the question as to whether physical force was used to obtain the confession. But the hearing judge concluded as a matter of law that, under all the circumstances, the confession was so tainted that its use at the trial amounted in law to a violation of due process. This is the ultimate question before us on review, and it is as much a question for this Court as for the court below.
 
 Lisenba v. California,
 
 supra, 314 U. S. 219, 237, 238, 62 S. Ct. 280, 86 L. Ed. 166;
 
 Lyons v. Oklahoma,
 
 supra, 322 U. S. 596, 602, 64 S. Ct. 1208, 88 L. Ed. 1481, 1485;
 
 Ashcraft v. Tennessee,
 
 322 U. S. 143, 148, 64 S. Ct. 921, 88 L. Ed. 1192, 1196;
 
 Watts v. Indiana,
 
 supra, 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1434. “The question of whether those confessions sub: sequently given are themselves voluntary depends on the inferences as to the continuing effect of the coercive practices which may fairly be drawn from the surrounding circumstances. Lisenba v. California, 314 U. S. 219, 240, [86 L. Ed. 166, 182, 62 S. Ct. 280]”:
 
 Lyons v. Oklahoma,
 
 supra, 322 U. S. 596, 602, 64 S. Ct. 1208, 88 L. Ed. 1481, 1485.
 

 The Supreme Court of the United States has recently held
 
 (Watts v. Indiana,
 
 supra, 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1434;
 
 Turner v. Pennsylvania,
 
 338 U. S. 62, 69 S. Ct. 1352, 93 L. Ed. 1443, and
 
 Harris v. South Carolina,
 
 338 U. S. 68, 69 S. Ct. 1354, 93 L. Ed. 1440) that a confession by which life becomes forfeit must be
 
 *424
 
 the expression of a free choice, and that, where the circumstances surrounding the obtaining of a confession by the police from a suspect before trial overwhelmingly point toward coercion and are incompatible with our system of obtaining evidence in criminal prosecutions, a prisoner is deprived of due process of law when such confession is used against him at the trial. But it is evident that not every confession obtained during a period of police custody and later used at a trial is necessarily a denial of due process. In order to set aside a conviction involving the use of a pre-trial confession for violation of criminal due process, there must be either (1) actual physical force or violence used to obtain the confession, or (2) a showing of such a set of circumstances as would lead to the conclusion that the confession was not the expression of free choice.
 
 Watts v. Indiana,
 
 supra, 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1434 (footnote 3, p. 1436). “The mere questioning of a suspect while in the custody of police officers is not prohibited either as a matter of common law or due process”:
 
 Lyons v. Oklahoma,
 
 supra, 322 U. S. 596, 601, 64 S. Ct. 1208, 88 L. Ed. 1481, 1485. As Mr. Justice Jackson points out in his separate opinion concurring in
 
 Watts v. Indiana,
 
 supra, 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1434, 1447, and dissenting in
 
 Harris v. South Carolina,
 
 supra, 338 U. S. 68, 69 S. Ct. 1354, 93 L. Ed. 1440, and
 
 Turner v. Pennsylvania,
 
 supra, 338 U. S. 62, 69 S. Ct. 1352, 93 L. Ed. 1443, unless the alleged violation of due process by the use of a pre-trial confession depended upon all the circumstances, no such confession could ever, as a practical matter, be used in criminal trials. Mr. Justice Jackson also stated, 93 L. Ed. at pages 1448, 1449: “If the right of interrogation be admitted, then it seems to me that we must leave it to trial judges and juries and state appellate courts to decide individual cases, unless they show some want of proper standards of decision.”
 

 
 *425
 
 We recognize that the use of a coerced or involuntary-confession as a means of obtaining a verdict of guilty violates due process
 
 (Lisenba v. California,
 
 supra, 314 U. S. 219, 237, 62 S. Ct. 280, 86 L. Ed. 166, 180), and, if the undisputed evidence shows that force or coercion was used to exact the confession, the judgment of conviction will not be permitted to stand, even though, without the confession, there is sufficient evidence to convict
 
 (Lyons v. Oklahoma,
 
 supra, 322 U. S. 596, 597, 64 S. Ct. 1208, 88 L. Ed. 1481, 1483;
 
 Malinski v. New York,
 
 324 U. S. 401, 65 S. Ct. 781, 89 L. Ed. 1029, 1032;
 
 Haley v. Ohio,
 
 332 U. S. 596, 599, 68 S. Ct. 302, 92 L. Ed. 224, 228).
 

 The undisputed facts in the present appeal show that relator was held by the police, after his return from Hallowell’s identification, at the police station for a comparatively short time before he signed the confession. The evidence shows that the Hallowell statement was taken in Germantown Hospital between 7:25 and 8 p.m., and relator’s statement or confession was made at 8:25 p.m., the same day relator was apprehended in Maryland. Cf.
 
 Com. v. Simmons,
 
 361 Pa. 391, 396, 65 A. 2d 353. It is clear therefore that this part of the detention did not exceed thirty minutes. There is no evidence that any force or coercion was exerted upon relator, apart from the fact he was in police custody, prior to his return to the Hunting Park Avenue Station from the Germantown Hospital. Any coercion used to obtain the confession must have been exerted, if at all, during the fifteen to thirty-minute period immediately preceding the signing of the confession. The court below made no specific finding that the confession was obtained by physical violence, and no such finding could have been made without a capricious disregard of the credible testimony and the substantiating circumstances. The fact of relator’s detention during this
 
 *426
 
 thirty-minute period is certainly not sufficient in itself to invalidate the confession under the Due Process Clause. See
 
 Lyons v. Oklahoma,
 
 supra, 322 U. S. 596, 597, 64 S. Ct. 1208, 88 L. Ed. 1481, 1483. The remainder of the forty-four hour detention, subsequent to the confession and prior to arraignment and hearing, cannot operate retroactively to invalidate it; and such detention had no bearing upon whether the confession was coerced (see Mr. Justice Burton's dissent in
 
 Haley v. Ohio,
 
 supra, 332 U. S. 596, 617, 68 S. Ct. 302, 92 L. Ed. 224, 237).
 

 The finding of the jury on the trial that the confession, as to receiving stolen goods, was not coerced, involved an implicit finding on the question of due process, although such finding is not necessarily conclusive.
 
 [3]
 

 Lisenba v. California,
 
 supra, 314 U. S. 219, 238, 62 S. Ct. 280, 86 L. Ed. 166, 180. Such finding was not inconclusive in the present proceeding for the reason given by the court below—that the jury acquitted relator on some charges and found him guilty of receiving stolen goods only. The jury’s verdict was not capricious; it was in accord with all the evidence, including relator’s confession. The evidence produced by relator in this habeas corpus proceeding was not sufficient to overcome the presumption of regularity inherent in the judgment upon which he makes collateral attack. He had the burden of establishing circumstances amounting to a denial of due process
 
 (Walker v. Johnston,
 
 supra, 312 U. S. 275, 61 S. Ct. 574, 85 L. Ed. 830, 836;
 
 Lisenba v. California,
 
 supra, 314 U. S. 219, 62 S. Ct. 280, 86 L. Ed. 166); he has failed to meet this burden. Convictions in criminal cases ought not to be lightly set aside by collateral attack. Such a result may be reached here, after
 
 *427
 
 the jury had passed on the voluntariness of relator’s confession, only upon a definite and conclusive showing of want of due process of law in obtaining his conviction. See
 
 Com. ex rel. McGlinn v. Smith,
 
 344 Pa. 41, 51, 24 A. 2d 1.
 

 The court below in its opinion stated: “In the case before us the focal point of infection was the primary action of the detectives in making the arrest in Maryland without the authority of the State of Maryland. This arrest and removal of relator from Maryland in violation of the Uniform Criminal Extradition Act and the subsequent coerced confession and the indictments ostensibly found thereon, all occurring as parts of a single, continuous transaction, constituted a denial of due process which resulted in a lack of jurisdiction in the Court which tried relator. The whole proceeding was, therefore, illegal. . . In discharging relator the court clearly exceeded its legal discretion in that the law was misapplied and the judgment exercised was manifestly unreasonable.
 
 [4]
 
 The evidence as to relator’s confession produced at the hearing on the petition for writ of habeas corpus was identical with or a mere repetition of that presented at his trial and passed upon by the jury. “The Fourteenth Amendment does not provide review of mere error in jury verdicts, even though the error concerns the voluntary character of a confession”:
 
 Lyons v. Oklahoma,
 
 supra, 322 U. S. 596, 605, 64 S. Ct. 1208, 88 L. Ed. 1481, 1487.
 

 In those cases in which the United States Supreme Court has set aside convictions on the ground that con
 
 *428
 
 fessions used had been procured under circumstances violative of the Due Process Clause, the circumstances surrounding the confessions were not comparable to those in this habeas corpus proceeding.
 

 Relator’s confession ivas not obtained under circumstances which lead inescapably to the conclusion that it was involuntary, and that its use at the trial was in violation of due process. Relator was not deprived of any constitutional right which would justify or warrant his discharge on habeas corpus. Setting aside on habeas corpus the conviction of this relator and discharging him under the circumstances constitute a misuse of the writ.
 

 Counsel for relator filed a motion to quash on the ground the Commonwealth had no right of appeal from an adverse decision in this criminal proceeding, relying on the principle announced in such cases as
 
 Com. v. Kerr,
 
 150 Pa. Superior Ct. 598, 600, 29 A. 2d 340, and
 
 Com. v. Frank,
 
 159 Pa. Superior Ct. 271, 277, 48 A. 2d 10, which limits the Commonwealth’s right of appeal in criminal cases. There is no doubt that the officer from whose custody a relator is discharged on habeas corpus may take an appeal from such order.
 
 Com. ex rel. Smith v. Butler,
 
 19 Pa. Superior Ct. 626, 628,
 
 629; Doyle v. Com.,
 
 107 Pa. 20. Such officer may appeal on behalf of the Commonwealth (see
 
 Com. ex rel. Mattox v. Superintendent of County Prison,
 
 supra, 152 Pa. Superior Ct. 167, 31 A. 2d 576), or the Commonwealth as the real party in interest may appeal (see
 
 Com. ex rel. Bucksharg v. Good,
 
 162 Pa. Superior Ct. 557, 58 A. 2d 842). Moreover, habeas corpus is a civil rather than a criminal proceeding, and relator’s argument as to the limitation of the Commonwealth’s right to appeal is not applicable.
 
 Ex parte Tom Tong,
 
 108 U. S. 556, 2 S. Ct. 871, 27 L. Ed. 826;
 
 People ex rel. Ross v. Ragen,
 
 391 Ill. 419, 63 N. E. 2d 874, 875; Sadler, Criminal Procedure in Penn
 
 *429
 
 sylvania, 2d Ed., Sec. 177; 25 Am. Jur., Habeas Corpus, Sec. 12. The motion to quash is refused.
 

 The order of the court below is reversed, and the record is remitted to the court below with the direction to refuse the writ of habeas corpus and commit relator to the custody of the Superintendent of the Philadelphia County Prison for compliance with the sentence imposed by the Court of Quarter Sessions of Philadelphia County which he was serving at the time of the entry of said order.
 

 [1]
 

 Act of April 4, 1837, P. L. 377, See. 2, 17 PS See. 502.
 

 [2]
 

 Relator testified that he had been handcuffed when apprehended in Maryland. As to this Judge Carroll commented: “I am convinced Sidney Master is lying about the handcuffs. -There is no question about that.” (99a)
 

 [3]
 

 The voluntariness of relator’s confession was submitted to the jury by the trial judge. See
 
 Com. v. Lockard,
 
 325 Pa. 56, 62, 188 A. 755;
 
 Com. v. Aston,
 
 227 Pa. 112, 75 A. 1019.
 

 [4]
 

 “ ‘An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.’ Mielcuszny et ux. v. Rosol, 317 Pa. 91, 93, 94, 176 A. 236”:
 
 Garrett’s Estate,
 
 335 Pa. 287, 293, 6 A. 2d 858. 860.