## Commonwealth ex rel. Garrison, Appellant, *v.* Burke.

Argued June 3, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Milton Garrison,* appellant, in propria persona.

*Donald W. Van Artsdalen,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BELL, June 28, 1954:

A petition for a writ of habeas corpus was presented alleging, inter alia, that the Commonwealth's evidence was circumstantial and failed to prove a felonious intent; that the defendant was illegally arrested; and that his Court-appointed counsel did not adequately and properly protect him.

Relator was indicted, and on January 28, 1953, was convicted of burglary. No motion for a new trial or motion in arrest of judgment was filed. Relator was thereupon sentenced to serve a term of 2 to 4 years in the Eastern State Penitentiary. No appeal was taken from the judgment or sentence of the Court. On May 13, 1953, relator filed the present petition for a writ of habeas corpus which, after hearing, was dismissed by the Court. Relator then took an appeal to the Superior Court which unanimously affirmed the judgment and sentence of the lower Court. An allocatur was allowed by a member of this Court.

In *Commonwealth ex rel. Marelia v. Burke,* 366 Pa. 124, 75 A. 2d 593, we said: "The extraordinary remedy of habeas corpus which can be successfully invoked only in exceptional cases, is not a substitute for a motion for new trial or for an appeal or for a writ of error: [Citing numerous cases]; and we strongly deprecate the present practice to use it as such.

"It is well settled that a relator cannot obtain relief by habeas corpus for errors alleged to have occurred in the course of his trial: [Citing numerous cases].

". . . the great weight of authority holds that the question of the sufficiency or insufficiency of the evidence to sustain a conviction cannot be raised by habeas corpus: [Citing cases and text authorities]."

In spite of the fact that decisions of the Supreme Court of the United States were in complete accord

with and fully sustained the principles asserted in *Commonwealth ex rel. Marelia v. Burke*, 366 Pa., supra, nevertheless, as Mr. Justice JACKSON said in his concurring opinion in *Brown v. Allen, Warden*, 344 U. S. 443, 540 (decided February 9, 1953): "Once upon a time the writ could not be substituted for appeal or other reviewing process but challenged only the legal competence or jurisdiction of the committing court. We have so departed from this principle that the profession now believes that the issues we *actually consider* on a federal prisoner's habeas corpus are substantially the same as would be considered on appeal."

We took cognizance of this trend when we said in *Commonwealth ex rel. Elliott v. Baldi*, 373 Pa. 489, 493, 96 A. 2d 122: "The cases are legion in which this Court has said that a writ of habeas corpus is not a substitute for an appeal or for a writ of error or for a motion for a new trial or for the correction of trial errors: Commonwealth ex rel. Marelia v. Burke, 366 Pa. 124, 75 A. 2d 593; Commonwealth ex rel. Smith v. Ashe, 364 Pa. 93, 71 A. 2d 107; Commonwealth ex rel. McGlinn v. Smith, 344 Pa. 41, 24 A. 2d 1. On the other hand, the recent tendency of Courts, especially the Supreme Court of the United States, has been to relax this general rule and to widen the scope of due process and allow a writ of habeas corpus when the interests of justice imperatively require it. See particularly Townsend v. Burke, Warden, 334 U. S. 736 and the recent United States Supreme Court cases of U. S. ex rel. Smith v. Baldi, 344 U. S. 561; Brown v. Allen, Warden, 344 U. S. 443; Speller v. Allen, Warden, 344 U. S. 443; and Daniels v. Allen, Warden, 344 U. S. 443."

Assuming, without deciding, that the matters raised by this relator can be raised on a petition for a writ of

habeas corpus, there is no merit to the petition. The Commonwealth's evidence at the trial clearly proved that a man, in the early morning hours of December 20, 1952, broke a window in a second floor bedroom and entered the room occupied by Frank Marks, aged 13, a son of Mr. and Mrs. Marks. Mrs. Marks was awakened by the noise, opened the bedroom door and faced and stared at the intruder who was 10 to 15 feet away. She yelled to her husband; the intruder then slammed the door shut, dove head first through the window which he had previously broken and opened; ran across a small shed roof and jumped from the roof to the ground.

Friends and neighbors conducted a search and approximately two hours later the relator was apprehended on a bridge that crosses the Neshaminy Creek a few hundred feet from the Marks home. Relator's clothes were wet and he was limping. He was taken to the Marks home where Mrs. Marks positively identified him as the intruder. Relator did not live in the neighborhood, but testified that while the search was being conducted he was (innocently) sitting on some steps almost directly across the street from the Marks home.

Relator contends that no felonious intent was shown and therefore he is entitled to be discharged. There is no merit in this contention. Two hours after the burglary, and at the trial, Mrs. Marks positively and repeatedly identified the intruder whom she saw in the hall as the (defendant or) relator. Intent may be inferred from actions as well as words: *Commonwealth v. Ellis*, 349 Pa. 402, 404, 37 A. 2d 504. It is clearly settled that a man may be convicted on circumstantial evidence alone, and a criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's

guilt beyond a reasonable doubt: *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A. 2d 820; *Commonwealth v. Homeyer,* 373 Pa. 150, 94 A. 2d 743; *Commonwealth v. Lowry,* 374 Pa. 594, 600, 98 A. 2d 733; *Commonwealth v. Danz,* 211 Pa. 507, 60 A. 1070; *Commonwealth v. Wentzel,* 360 Pa. 137, 61 A. 2d 309.

Relator next contends that he was beaten and mistreated by the Marks' and their neighbors when he was caught and that that is ground for his discharge on a writ of habeas corpus. The witnesses for the Commonwealth denied any beating or mistreatment. However, even if relator's contention had been supported by competent and adequate proof, a private citizen may arrest a felon without a warrant where (1) a felony has actually been committed and (2) he has reasonable grounds to suspect that the person he arrests committed the felony: Sadler Criminal Procedure in Pennsylvania, §89; Maurer's Notes on Criminal Law, §300; 4 Am. Jur. §22, page 16; Restatement, Torts, §119; *Brooks v. Commonwealth,* 61 Pa. 352. Cf. *Commonwealth ex rel. Spencer v. Ashe,* 364 Pa. 442, 71 A. 2d 799; *Commonwealth ex rel. Schuch v. Burke,* 174 Pa. Superior Ct. 137, 100 A. 2d 122.

An illegal arrest, even if excessive force were used, does not, without more, amount to a denial of due process or furnish grounds, after conviction, for discharge on a writ of habeas corpus: *Commonwealth ex rel. Grierson v. Ashe,* 353 Pa. 1, 44 A. 2d 239, Certiorari denied, 327 U. S. 790; *Commonwealth ex rel. Spencer v. Ashe,* 364 Pa., supra; *Commonwealth ex rel. Burge v. Ashe,* 168 Pa. Superior Ct. 271, 77 A. 2d 725; *Commonwealth ex rel. Chambers v. Claudy,* 171 Pa. Superior Ct. 115, 90 A. 2d 383.

Relator's contention that his Court-appointed counsel did not wisely cross-examine the Commonwealth's witnesses and adequately represent his interests is

likewise without merit, even if the present proceeding be considered in the nature of an appeal. Such a contention or accusation is becoming more and more frequent. Losing counsel is ofttimes blamed by succeeding counsel who, with the benefit of hindsight, is convinced that he could have more ably conducted the defense with the result that defendant would have been acquitted. If such contentions were to prevail a new trial would have to be granted in nearly every case where a man was convicted of crime, and there would be no finality to any criminal trial.

The Order dismissing the Petition for the Writ of Habeas Corpus is affirmed.

Mr. Justice JONES concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

This case could well be used as an exhibit in support of the movement to establish public defenders in the criminal courts of Pennsylvania. The defendant here is serving a term of two to four years in the penitentiary for a crime, the record shows, he did not commit. The indictment under which Milton Garrison was tried reads: "THE GRAND INQUEST of the Commonwealth of Pennsylvania, inquiring for the County of Bucks, upon their respective oaths and affirmations respectfully do present: THAT Milton Garrison late of the said County, Yeoman on the Twentieth day of December in the year of our Lord one thousand nine hundred and Fifty-two at the County aforesaid, and within the jurisdiction of this Court, with force and arms, etc., the certain dwelling then and there situate, maliciously, wilfully, feloniously and burglariously did then and there break and enter, with intent, then and there, the goods and chattels, moneys and property of Lillian Marks then and there being, then and

there maliciously, wilfully, feloniously and burglariously to steal, take and carry away, contrary to the form of the Act of the General Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania. Willard S. Curtin, DISTRICT ATTORNEY."

There is not a scrap of evidence in the whole record that Milton Garrison entered the dwelling of Lillian Marks "to steal, take and carry away" the "goods and chattels, moneys and property of Lillian Marks." There is not a word of testimony to the effect that Milton Garrison attempted to steal, that he attempted to take, or attempted to carry away anything belonging to Lillian Marks. In his charge to the jury, the Trial Judge, speaking of the testimony of Frank Marks, in whose room the intruder entered, said: "Frank testified he heard window glass breaking, that he actually saw no one come through the window, but he did see a man walking across to the bureau in his room, looked upon the bureau or *fumbled around the bureau,* I don't recall exactly, and then went to the door of the bedroom. ." *

There is not one syllable in the whole stenographic transcript to substantiate the Judge's statement that Frank said that the defendant "had fumbled around the bureau." The only testimony on this subject was as follows, Frank speaking: "Q. Then what did you see next? A. He walked over to the bureau in my room and he stopped and looked on it. Q. He looked on the bureau? A. Yes."

To look at a bureau, or even "look on it" as the witness put it, cannot by the most elastic interpretation of language be construed to mean an attempt to commit larceny. The trespasser must have looked at

---

* Italics throughout, mine.

many other things in the room. The natural panoramic sweep of one's eyes is bound to encompass many objects, but it can scarcely be said, without some evidence to fortify the assumption, that that look was larcenous. The Judge misstated the evidence when he said that Frank said the trespasser fumbled around the bureau. The error, of course, was unintentional. The Judge did not at the moment recall just what the witness had said, and so indicated. However, the Judge's saying that he wasn't certain did not save the situation. This was the basis of the whole case of burglary. It was his duty to be certain on a matter which was the bedrock foundation of the entire prosecution.

However, the Judge did not stop with erring in his recollection. He came back to emphasize his error. Later on in his charge he said: "Consider the fact that he, according to the testimony of the son, Frank Marks, *fumbled around* or looked on the bureau in the boy's bedroom. What was his purpose in doing that? *You might well find from that evidence,* in my opinion, *that this intruder had the intent to commit a felony, to wit; the crime of larceny.*"

Here the Judge instructed the jury that on this non-existent testimony they could build the intent to commit a felony. But, again, the Judge did not stop here. He persisted in his error and almost made a fetish of it. In the very next paragraph of the charge he said: "Of course, that matter is entirely for you. I am not telling you what your verdict should be, but it is my opinion that you *could find such an intent from those circumstances,* together with all the other circumstances in the case."

This instruction was egregiously wrong. You cannot find an intent from something that is a vaporous nothing.

The Judge charged the jury on *January 29, 1953,* the jury returned a verdict of guilty on *January 29, 1953,* the Judge sentenced the defendant on *January 29, 1953.* The sentence reads: "The Court orders and directs that the Defendant Milton Garrison pay the costs of prosecution and a fine of five dollars ($5.00) to the Commonwealth for the use of the County of Bucks: *that he restore to the owner the property stolen or pay value of the same* or so much thereof as may not be restored, and undergo imprisonment in separate or solitary confinement at labor, in the State Penitentiary for the Eastern District of Pennsylvania for a period of not less than two (2) years nor more than four (4) years to commence and be computed from December 22, 1952, and to be there fed, clothed and in all respects treated as the law directs and stand committed until judgment be fully complied with."

It will be noted that the Judge, evidently from a constant repetition of his error that the defendant had fumbled around with the bureau, came to believe that the defendant had actually stolen something (the Judge does not say *what*) and he accordingly sentenced the defendant to restore that something or the value thereof. How do you determine the value of something that exists only in imagination, and was stolen only in imagination?

The defendant being without funds to employ counsel for the trial the Court appointed a young lawyer to defend him. The record shows that defense counsel handled himself well during the trial but the record also shows that he made no motion for a new trial or arrest of judgment. It is possible that defense counsel failed to appeal because (1) he may not have noted the Judge's error; (2) he may have felt that receiving no compensation he had completely discharged his moral and professional obligation when the jury

returned its verdict; (3) the filing of motion for a new trial and possible appeal to the Superior Court would have entailed expenses out of his own pocket; (4) he may have believed that the defendant was guilty anyway.

There is nothing in the record to show that with the failure of the attorney to appeal that the defendant himself was informed by the Court or by the District Attorney of his rights in this respect. Since Garrison was sentenced on the very same day that the jury returned its verdict he had no time to reflect or even to obtain information as to whether he could or could not appeal.

Another serious matter in the case is that when the Judge sentenced the defendant he was definitely of the opinion, as indicated, that the evidence showed larcenous intent on the part of the defendant. Of course, he did not have an opportunity to review the notes of testimony before he sentenced the defendant because obviously they could not have been transcribed on the same day the trial ended. In point of fact, the notes of testimony were not filed until February 25, 1953, 26 days after the termination of the trial. We do not know whether the Trial Judge ever looked at the notes of testimony but we do know that at the hearing on the petition for writ of habeas corpus, the defendant remembered the testimony of Frank Marks much more clearly than the Judge. He definitely recalled that Frank Marks had actually only said that the intruder "looked on a bureau." When Garrison emphasized that "That is the only evidence," the Judge remonstrated: "You are jumping all over the place. Stick to one subject at a time."

When Garrison called attention to the fact that the Judge had charged the jury that the jury could find

such an intent (burglarious) from the circumstance of the intruder having "fumbled around" the bureau, the Judge replied that he was only expressing his opinion which he had the right to do. A trial judge does have the right to express an opinion but he commits grave error when he bases that opinion on a purely conjectured circumstance having neither factual nor inferential foundation.

The facts in the case of *Commonwealth v. Ellis,* 349 Pa. 402, were sufficiently similar in principle to the circumstances here related to make the present conviction of burglary morally untenable and legally intolerable. In the *Ellis* case the evidence established that one night at 1:30 a.m. the defendant broke a window and forced himself into the home of the complaining witness, Mrs. Bessie Charland. She ordered him to leave but he refused to do so. When later she called the police he departed. He was charged with burglary. In the lower court it was argued by the Commonwealth that since the defendant was an unwanted guest in the house at the time indicated he could only have been there for the purpose of committing a felony, namely, rape. The defendant was convicted. This Court reversed the conviction which, incidentally, had been affirmed by the Superior Court, and said: "The record contains no evidence of an intention to commit any felonious act against the person or property of Mrs. Charland. It is true that intent may be inferred from actions as well as words. These actions, however, must bear a reasonable relation to the commission of the felony. The record discloses no overt act sufficiently proximate to the alleged intended crime which may properly be said to be one of the natural series of acts required for the commission of the crime. The verdict is one which under the evidence could only have been reached by, and

based upon, conjecture and surmise rather than permissible inferences from evidence adduced."

If we accept the jury's finding that Garrison actually entered the Marks home (he denied it at the trial) there can be no question that he was where he had no right to be. There is evidence in the record that he was intoxicated that night and if he entered the house it is quite probable he did so as the result of alcoholic irresponsibility. He was certainly a trespasser and he broke a window, offenses for which he could be punished, but to convict him of the crime of burglary in the absence of evidence that he was intending to commit a felony is to play at ducks and drakes with the law.

In refusing the writ of habeas corpus, the lower court remarked that the writ "is not a substitute for an appeal or for a writ of error or for a motion for a new trial or for the correction of trial errors." The District Attorney, presenting the case here for the respondent Warden of the Eastern Penitentiary, repeats the argument of the lower court, but they both ignore the fact that the defendant was handicapped in an appeal. Certainly if a defendant has an attorney to advise him of his rights to an appeal and the defendant refuses to avail himself of appellate relief, a writ of habeas corpus can be denied in the absence of proof that he has discovered additional evidence not available to him at the trial. But where one is indigent, where the Court-appointed lawyer leaves him on his own immediately after the verdict, and where the Judge imposes a sentence before he can have opportunity to study the transcript of the testimony to ascertain if he has made an error, it is clear that the writ of habeas corpus is not only proper but the only means left to the defendant to obtain the justice so far denied him.

But there is something more serious here. The defendant has been denied due process, and where a judgment is based on proceedings which do not respect the law of the land, such judgment is subject to collateral attack and may be set aside upon habeas corpus. (*Johnson v. Zerbst*, 304 U. S. 458; *Walker v. Johnston*, 312 U. S. 275; *Com. ex rel. Master v. Baldi*, 166 Pa. Superior Ct. 413, 418. In the case of *Commonwealth ex rel. Master v. Baldi*, supra, p. 419, the Superior Court said: "Although our review of an order of a lower court in a habeas corpus proceeding is limited, we may examine the evidence sent up with the record to test the right of the court to make the order complained of; we do not weigh conflicting evidence, but we determine whether the order appealed from is supported *by any evidence*, and whether the court had jurisdiction to do the act complained of or *exceeded its legal discretion*."

It is my conclusion, upon a study of the entire record, that the conviction of burglary in this case *is not supported by any evidence* and that the court below *exceeded its legal discretion*, and, therefore, the defendant is entitled to be discharged.

This case is a tragic illustration of how a prisoner can be held within the walls of a penitentiary on a phantom prosecution. We have pointed out how the Trial Judge incorrectly stated that the defendant fumbled around the bureau. The District Attorney goes further and improves on the Trial Judge's vivid imagination. In his printed brief submitted to this Court he asserts that the defendant "searched the top of the bedroom bureau." There is not the slightest whisper of a suggestion in the whole 134 pages of the record that the defendant searched the top of the bureau, that he searched any part of the bureau, or that

he searched anywhere or anything in any part of the house.

It seems certain that the District Attorney did not consciously intend to misquote testimony to this Court. I am convinced that his misstatement sprang from the seed of an ardent partisanship, that it grew in the soil of a fervent loyalty to the home Court, that it was watered by a boundless determination to win the case, that it was cultivated in the sun of a prosecutor's zeal, and that it finally flourished in the assumption that the defendant was not of sufficient importance to warrant a meticulous adherence to the official transcript. But no person who comes into court, regardless of rags, record, or repute, can be deprived of a fair trial, a deliberative adjudication, and a reflective judgment. Milton Garrison may have been the most worthless person in the community, but the agencies of government should be the last to push him down into an even lower stratum of respected society. I do not know what Garrison's past was, except that the transcript shows that on the night of his arrest he was wearing the remnants of an American army uniform, the shreds perhaps of an honored past, regardless of what Fate had done to him since.

The sheer lack of concern over the inalienable rights of a citizen of this Republic could not be made more manifest than the manner in which the learned District Attorney prepared the brief submitted in this case. Contending for the affirmance of the verdict, the District Attorney cited the case of *Commonwealth v. Ellis,* 154 Pa. Superior Ct. 227, as an authority, and argued that the conviction of Garrison was entirely proper because in the Ellis case the conviction "was affirmed on much slimmer evidence." It is indeed a poor case which must be affirmed on the fact that some time in the past some other unfortunate mortal

was hurried into a disgraceful destiny on even "slimmer evidence." But the situation is much worse than that. It so happens that the case cited by the District Attorney was appealed from the Superior Court to the Supreme Court and this Court reversed the conviction and *discharged the defendant* just because the evidence against him was *so slim!* This is the very case that I referred to in the earlier part of this Opinion.

At the hearing on the writ of habeas corpus Garrison complained that he had been arrested illegally. The Court held that that had nothing to do with the proceeding. Without any attorney to advise him the relator then imprudently said: "The fact is I fought a war to help the United States obtain justice. Me and twelve million other men went over there and jeopardized our lives for the right of illegal [he obviously meant legal] seizure and trial by Court. I gave four years of my life."

To this the Judge replied: "What has that to do with the present proceeding?"

Of course, the answer is that it had nothing to do with the present proceeding. I cannot help but observe, however, that the record of this case would look much better if the Court had decided that the illegal conviction of a citizen and ex-soldier of the United States had much to do with the proceedings.