## Commonwealth v. Mayhugh

*C. Gregory Frantz, Assistant District Attorney,* for Commonwealth.
*James B. Yelovich,* for defendant Wedge.
*Wilbert H. Beachy, III,* for defendant Mayhugh.

SHAULIS, *J.,* September 20, 1976—This matter is before the court on defendants' motions in arrest of judgment and for a new trial. Applications to suppress evidence were filed and heard by the court and on January 12, 1976, and on February 25, 1976, orders refusing the applications to suppress were entered. Thereafter, the matter came on for trial before this court without a jury and defendants were both convicted of possession of a controlled substance, a misdemeanor. The motions in arrest of judgment and for a new trial are primarily based on the court's refusal to suppress the evidence and the admission into evidence of a quantity of marijuana and smoking paraphernalia allegedly found in the automobile of defendant, Gary Wedge.

The incident in question occurred at approximately 12:30 a.m. on March 23, 1975, on lands which were leased to the Game Commission. A game protector, while on patrol, came upon a motor vehicle which was parked on the leased land without its lights on. The game protector testified that he stopped and approached the automobile on foot at which time he smelled the odor of what he believed to be marijuana. When he arrived at the vehicle, he ordered the occupants out, and, according to his testimony, as the occupants were exiting the vehicle he noticed a bag of what he believed to be marijuana on the floor "in plain view." He then turned to the occupants and stated: "Do you know what this means—I'm placing you under arrest." When one of the occupants, Mayhugh, asked to relieve himself, the game protector seized another bag of what he believed to be marijuana when he observed Mayhugh discard some object as he was relieving himself. The occupants were then taken to the police barracks in Meyersdale at which time a further search was conducted by the State Police.

The first question to be answered relative to the suppression of the evidence concerns the authority of a game protector to make warrantless arrests and conduct searches. The powers of a game protector are specifically provided for by statute. The Act of June 3, 1937, P.L. 1225, 34 P.S. §1311.214(f), provides that a game protector has the power, "[t]o arrest without warrant any person found in the act of violating any of the provisions of this act, or in pursuit immediately following such violation." Nowhere is it statutorily provided that game protectors shall have the same power to make warrantless arrests as police officers. Their power to make warrantless arrests is strictly limited by statute to

those situations in which a game protector apprehends a person who is in the act of committing a game violation, or who is in flight immediately following such a violation. If no such situation exists, then the legality of the warrantless arrest must be judged relative to the power of a private citizen to make a warrantless arrest.

It should be noted that section 1311.214 gives very broad powers to game protectors to conduct searches and seizures. In fact, the statute on its face gives broader powers to game officers than the powers granted to police officers to conduct searches and seizures. It is realistic, therefore, to presume that this area of The Game Law must be qualified so as to be consistent with the constitutional restrictions against unreasonable searches and seizures. (Compare, for example, the limitations imposed in section 1221(b) of The Vehicle Code of April 29, 1959, P.L. 58, as amended.) Therefore, before a game protector can stop a vehicle or conduct a search, there must be present some reasonable grounds (suspicion) based on articulable facts which would lead a game protector to believe that game violations may be occuring or have occurred. Even then, the game statute provides, section 1311.214(h), that before an inspection or search can be conducted, the game protector "shall be in uniform and display his badge or other insignia of identification and shall state to the person in charge of said vehicle . . . the purpose of the inspection or search. . . ." These requirements have apparently been strictly enforced. See Commonwealth v. Savage, 17 D. & C. 2d 697 (1959).

Under the facts as testified to by the game protector, it would be valid to hold that he had, upon seeing a motor vehicle parked late at night, or early

morning, on land leased to the Game Commission, reasonable grounds to conduct a further investigation in his capacity as a game protector. As he approached the car, however, he sensed the odor of what he believed to be marijuana. At this point, two conclusions can be drawn. One is that he realized that the occupants were simply a group of young people who had come upon the game lands only for the purpose of finding a secluded spot to smoke marijuana. In such case, the game protector should have realized that there was no game law violation being committed, and, therefore, all of his subsequent acts should be judged on the basis of the conduct of a private citizen. The second conclusion is that even though he smelled the odor of marijuana and could presume that the occupants of the vehicle were there for the purpose of smoking the stuff, he could not be entirely sure that game violations had not occurred unless he conducted a further inquiry. In this instance, the game protector's authority would be determined relative to his power as a game protector. In reality, it would be more likely to presume that upon his first smelling marijuana, he knew that no game violations were being committed but it would be reasonable to find that a further investigation would still be mandated within his capacity as a game protector.

If it is assumed that the game protector was still acting within his authority at the time he ordered the occupants to get out of the car and thereupon observed and seized the first bag of marijuana on the floor of the vehicle, it is difficult to see how the seizure could be justified under section 1311.214(h) of The Game Law. This section states that if any inspections or searches are conducted, the game protector must identify himself as a game

protector and inform the person who was in charge of the vehicle that the purpose of the search was to discover items which would evidence a game law violation. This, the game protector did not do and any subsequent seizure of the person or property, or search of the vehicle would be unjustified under the game law provisions. Furthermore, his power to arrest without a warrant, under The Game Act is limited to those situations in which a game violation has occurred.

The testimony of the game protector confirms the conclusion that upon his smelling of the marijuana, he proceeded on the basis of pursuing this potential crime as opposed to any game violation. At this point, we are dealing with the game protector's right to make a warrantless arrest as a private citizen. Certainly, a private citizen would have no authority to order people out of a car and make a search of the vehicle unless it was pursuant to a lawful arrest. It really can't even be said that any evidence seized by the game protector would have been the equivalent of having it seized by a private citizen because he was at all times acting, at least in his eyes and the eyes of the occupants, under the color of some police or government authority. The critical question then seems to be whether, at the time he smelled the marijuana, he had the authority as a private citizen to make a lawful warrantless arrest which would justify the search incident thereto.

The following comment concerning a private person's authority to arrest is provided in 3 P.L.E. 38, §5:

"A private person may arrest for a felony without a warrant. In the case of Brooks v. Commonwealth, the Supreme Court pointed out that a private per-

son, in making an arrest for a felony, must give notice of his purpose to arrest for the felony, and quoted from an opinion by Chief Justice Tilghman, as follows: 'It is nowhere said that there shall be no arrest without warrant. To have said so would have endangered the safety of society. The felon who is seen to commit murder or robbery must be arrested on the spot or suffered to escape. So, although not seen, yet if known to have committed a felony and pursued without warrant, he may be arrested by any person. And even when there is only probable cause of suspicion, a private person may, without warrant, at his peril, make an arrest. I say at his peril, for nothing short of proving the felony will justify the arrest.'

"Also, a private person may arrest a felon without a warrant if a felony has actually been committed and if the private person has reasonable grounds to suspect that the person he arrests has committed the felony."

In Commonwealth ex rel. Garrison v. Burke, 378 Pa. 344, 349, 106 A. 2d 587 (1954), the court stated that ". . . a private citizen may arrest a felon without a warrant where (1) a felony has actually been committed and (2) he has reasonable grounds to suspect that the person he arrests committed the felony. . . ." See also Commonwealth ex rel. Duncan v. Rundle, 424 Pa. 385, 227 A. 2d 659 (1967); Commonwealth ex rel. Spencer v. Ashe, 364 Pa. 442, 71 A. 2d 799 (1950). In Commonwealth v. Duerr, 158 Pa. Superior Ct. 484, 45 A. 2d 235 (1946) at page 491, the court stated:

"A private person present when a felony is committed may also arrest a felon without a warrant. Otherwise, society would be in danger as it is often necessary that a felon who is *about to commit a*

*robbery, murder, etc.,* be arrested on the spot or allowed to escape. Brooks v. Commonwealth, 61 Pa. 352." (Emphasis supplied.)

Although it is not entirely clear, it appears that the courts are talking about two different types of arrest situations. One is where the private citizen is physically present when the felony is being committed or about to be committed. The second one is where the felony has already been committed, and the private citizen becomes aware of the fact that a felony has been committed apart from his actual presence at the scene of the crime and he subsequently is made aware of the person who allegedly committed the crime and he thereafter arrests the suspect. In the latter case, for the arrest to be privileged, the felony must, in fact, have been committed, and there must have been a reasonable ground to suspect the person arrested.

The cases which involve a private citizen's arrest of a person committing a felony in his presence normally involve a crime of violence in which the private citizen can readily observe that a murder, rape, robbery, etc. is being committed in his presence. His senses perceive conduct which clearly indicates that a felony is being committed or about to be committed. In the present case, however, the game protector simply smelled the odor of marijuana. While it is reasonable to assume that the occupants were passing the marijuana around, that in and of itself is not a felony. The drug act of April 14, 1972, P.L. 233, as amended, provides (35 P.S. §780-113, section (a) (31) and (g)), that if a person possesses, or possesses with intent to deliver, but not for sale, or actually distributes marijuana, but not for sale, an amount under 30 grams, he is guilty of only a misdemeanor. When

the game protector stated that he smelled marijuana and proceeded on that basis, he could not have been aware of any facts which would have led him to conclude that a sale had occurred, which, regardless of the amount of marijuana involved, would be a felony. Possession alone without intent to deliver or actual delivery of 30 grams or more is only a misdemeanor. The most that the game protector could reasonably assume at the time he smelled the marijuana was that there were several young people sharing some marijuana. He could not, from the information which he had at that time, reasonably conclude that a sale was being transacted or that the occupants were possessing with the intent to deliver, or actually delivering an amount in excess of 30 grams, all of which would be a felony. Under these circumstances, it is clear that the game protector did not have reasonable grounds to believe that a felony was being committed, or was about to be committed at the time he observed the car and its occupants and smelled the marijuana. Without more, he only had reasonable grounds to believe that a misdemeanor, not amounting to a breach of the peace, was occurring. Under these circumstances, a private citizen would not have the authority to make a warrantless arrest. Even if it were a misdemeanor which amounted to a breach of the peace, it is not clear whether, under the present rules of criminal procedure, the private citizen would have the authority to make a warrantless arrest.

If the arrest was illegal, then the next question is what could or should the game protector have done under the circumstances? It would have been reasonable for him, after observing the car in a suspicious area, at least for game violations, to approach the car and even though he smelled

marijuana (game violators may conceivably also smoke marijuana) state to the occupants his position and his purpose which would be to search the vehicle for any possible game violations, as required by statute. Since in the instant case, he failed to follow this statutorily required procedure, the search could not be justified under The Game Law. Upon discovery of the marijuana, he could reach two conclusions, depending on the amount discovered. If it were a small amount and no evidence of a sale was present, he would have reasonable grounds to believe that a misdemeanor, not amounting to a breach of the peace, had been or was being committed in his presence. Although he would have no authority to arrest as a private citizen, it seems that he could confiscate the marijuana, obtain the names of the occupants and/or the license number of the vehicle and turn this over to the police who would then issue warrants for the arrests of the occupants.

There is no evidence in this case that Warden Askey ever believed that a felony was being committed in his presence or had been committed; he believed that he had the authority to make the arrest and conduct a search because of the fact that he was a game protector, which simply is not the law.

We were in error in admitting into evidence the fruit of an illegal search and seizure which search and seizure were incident to an illegal arrest by Game Protector Askey who does not have the power of arrest for offenses of this nature.

It would be futile to award a new trial in this case because without the evidence which we now rule to be inadmissible, the Commonwealth would not have sufficient evidence to convict at a subsequent trial.

## ORDER

Now, September 20, 1976, the motions of both defendants in arrest of judgment are allowed. Judgment is arrested as to both and defendants are discharged.