Commonwealth *v.* Lance, Appellant.

294

Argued March 14, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Linas V. Ledebur, Jr.*, with him *Edward J. McClain*, for appellant.

*Richard P. Steward*, District Attorney, for appellee.

OPINION BY MR. JUSTICE ARNOLD, April 18, 1955:

Defendant was indicted for the murders of his wife and two stepchildren. He was tried only for the killing of his stepson, and was convicted by a jury which fixed the penalty at death. He appeals from the judgment and sentence of death entered upon the verdict. The only defense was insanity at the time of the homicides.

The killings occurred on the evening of June 11, 1954, in their home in Big Beaver Township, Beaver County. At that time defendant was approximately thirty years of age. He had quit school after the ninth grade, and had thereafter served in World War II, during which he suffered a concussion from a mortar

shell burst. In 1950 he married one Agnes Hoffman, whom he killed and who was the mother of the two stepchildren killed by him.

After much contention during the several years of their marriage, he and his wife, on June 10, 1954, arranged through an attorney for separation and support. The following morning he and his wife went shopping in nearby Beaver Falls, during which time they drank some beer. They returned to their home at approximately 6:00 P.M. and shortly thereafter engaged in argument. He then picked up a 22 calibre revolver from a chair where he had left it after hunting, and proceeded to kill his wife, his 12 year old stepdaughter, and his 10 year old stepson. He then placed his stepdaughter on a bed, undressed her, and had intercourse with her body. He left the home, drove down the road for a bit, and then returned to feed his chickens. He again left and drove until apprehended by officers in New Bethlehem the following day. Thereupon he confessed all the incidents of the killings, which confession was the principal source of facts presented to the jury.

Defendant admitted all the facts concerning the homicides. His only defense was insanity, his contention being that he "blacked out" when he shot and until he was in the jail. He assigns as grounds for appeal that (1) the verdict was contrary to the evidence and the weight of the evidence; (2) the court erred in expressing an opinion in its charge to the jury as to the degree of guilt of the defendant; and (3) the court erred in its charge, in that it reviewed the evidence in such a manner as to disparage the defendant's defense of insanity.

A careful and painstaking review of the testimony presented in this case, to prove these atrocious and brutal killings, leaves no doubt that it was sufficient

to sustain the verdict. See Act of 1870, P. L. 15, §2, 19 PS §1187; and *Commonwealth v. Thompson*, 321 Pa. 327, 184 A. 97. Defendant contends, however, "that these brutal and unjustifiable killings, in all their revolting circumstances, coupled with the immediate sexual act of the defendant following the killings and his later return to the scene of the killings merely to feed his chickens, obviously indicated the 'insanity' of the defendant." But the test is not insanity in a general sense, but whether he knew the difference between right and wrong. He argues that the negative testimony of witnesses produced by the Commonwealth, to refute the claim of insanity, should not be taken to have overcome the effect of the testimony of his expert medical witnesses. A sufficient answer to this can be given in the words of this Court in *Commonwealth v. Patskin*, 372 Pa. 402, 423, 93 A. 2d 704, where we said: " '. . . defendant's actions in the present case, speaking louder than his words, wholly refute the opinion evidence of the expert medical witness . . .' In this case the jury must have believed, as we do, that the delusions were concocted by the defendant for the trial . . . If evidence such as this were sufficient to prove legal insanity and to prevail over acts and statements clearly evidencing sanity, few 'murderers' would ever be convicted." In addition, the question of whom the jury should believe was exclusively for it, and this question was resolved against the defendant: *Commonwealth v. Bibalo*, 375 Pa. 257, 100 A. 2d 45. The Commonwealth produced not only lay witnesses but also a medical doctor on the matter of defendant's sanity.

In *Commonwealth v. Wiseback*, 190 Pa. 138, 145, 42 A. 542, we upheld the legality of negative testimony of lay witnesses and there held: "The defendant alleged that he gave evidence of insanity for a period of eight months before the homicide; the common-

wealth could answer it in no other way than by calling those who had seen and conversed with him during the same time, to testify that they had noticed nothing indicating unsoundness of mind. *The defendant might well argue that this negative, when compared with his affirmative testimony, was the weaker, but his objection to its admissibility is not well founded."* (Italics supplied). Nor can this defendant contend that his testimony was not overcome by the Commonwealth's negative testimony coupled with the Commonwealth's medical testimony. The jury chose to disbelieve the testimony of his expert witnesses, and the testimony being sufficient to sustain its verdict, this Court will not substitute its judgment for that of the jury: *Commonwealth v. Pasco,* 332 Pa. 439, 444, 2 A. 2d 736; *Commonwealth v. Carluccetti,* 369 Pa. 190, 206, 85 A. 2d 391.

Defendant next complains that the court erred in its charge as to the degree of guilt. The court stated that it was "of the opinion that . . . if you [the jury] reach the conclusion that the defendant be guilty of murder, that it is murder in the first degree, and not murder in the second degree." But it added: "However, I leave that for you to determine, as, after all, the jury has to determine the degree of guilt of the crime." It also expressed its opinion that there was not sufficient evidence of voluntary manslaughter or second degree murder, and again stated: "But you are not bound by my opinion; you are the ones to determine that, and not the Judge, although I am allowed to express an opinion."

We said in *Commonwealth v. Chambers,* 367 Pa. 159, 164, 79 A. 2d 201: "While the main purpose of a judge is to state and explain the law and briefly review the evidence, it is always the privilege and sometimes the duty of a trial judge to express his own opin-

ion, including his opinion of the weight and effect of the evidence or its points of strength and weakness or even the guilt or innocence of the defendant and the verdict which, in his judgment, the jury should render, provided (1) there is reasonable ground for any statement he may make; and (2) he clearly leaves to the jury the right to decide all the facts and every question involved in the case, regardless of any opinion of the court thereon." All of these requirements were more than adequately met in the instant case.

Further, at the very conclusion of its charge, the court fully, clearly and adequately,—and without expression of opinion,—left to the jury that it could find (1) murder in the first degree, or (2) murder in the second degree, or (3) voluntary manslaughter, or (4) not guilty by reason of insanity, or (5) not guilty. It is to be noted also that no special exceptions to the charge were taken, nor did defendant offer to call anything to the court's attention when given an opportunity to do so at the conclusion of the charge.

The charge must be considered in its entirety and error cannot be predicated on certain isolated excerpts from it (*Commonwealth v. Moyer*, 357 Pa. 181, 187, 53 A. 2d 736); which is what defendant attempts to do in contending that the court disparaged his evidence of insanity. The excerpts quoted by him, when read with that which preceded and followed them, take on an entirely different meaning, and in nowise were prejudicial to him. Contrary to defendant's contentions, the court charged the jury: "On behalf of Dr. Pearson [defendant's expert witness] I should say that his experience, his study, and so forth, puts him in a position to give a more learned opinion as to the state of mind of this boy on the day of the happening of this tragedy, that being June 11th, 1954; the examination having been made sometime in the middle of August,

this year . . . Well, because it is entitled to more weight, you may consider, and you have a right to consider that the opinion of Dr. Pearson would be entitled to more weight than the opinion of an ordinary physician like Dr. Mackall [Commonwealth's expert witness], or these people who worked beside him—but, you are not bound by that. You may consider all the facts in the case in connection with these opinions, and thereby reach a proper conclusion." Actually the defendant would have us minimize unfairly the very strong and adequate testimony of the Commonwealth.

The court, for six pages of the record, fully reviewed the evidence of defendant and his witnesses; and, in a charge totalling some 38 pages, sufficiently and adequately instructed the jury as to the law. Nowhere did it interfere with the province of the jury to find the facts. Cf. *Commonwealth v. Sykes*, 353 Pa. 392, 45 A. 2d 43. The defendant had a fair trial, and the jury chose to believe the Commonwealth and to fix the penalty for his crime at death, with which result we find no reason to interfere.

Judgment and sentence affirmed.