## Commonwealth v. Petty

*Oliver E. Mattas, Jr., District Attorney,* for Commonwealth.
*Benjamin H. Claar Jr.,* for defendant.

BRUMBAUGH, *J.,* March 30, 1981—Before us for disposition is defendant's motion for a psychiatric evaluation and determination of criminal responsibility. Specifically, defendant avers that "he is unable to understand the nature or object of the proceedings against him or that at the time of his offense he was unable to distinguish right from wrong," accordingly requesting an incompetency examination under section 402 of the Mental Health Procedures Act of July 9, 1976, P.L. 817, as amended, 50 P.S. §7402.

The aforesaid act provides, 50 P.S. §7402(d), that: "The court, either on application or on its own motion, may order an incompetency examination. . . ." This language does not mandate such an examination but is advisory only, leaving the matter to the sound discretion of the court: Com. v. Megella, 268 Pa. Superior Ct. 316, 408 A. 2d 483 (1979). The mere fact of application does not of

itself create entitlement to the relief sought. See United States v. McDonnell, 573 F. 2d 165 (3d Cir. 1978).

This footnote comment of our Superior Court in Com. v. Smith, 227 Pa. Superior Ct. 355, 364, 324 A. 2d 483, 488 (1974), allocatur refused, is here relevant:

"Nor do we suggest that a trial judge is not free to decline to explore a defendant's competency to stand trial . . . where it appears that the issue is frivolous or raised in bad faith or otherwise insufficient to create a reasonable doubt of the defendant's competency."

At hearing on the application defendant himself was the only witness. He testified that he has never been examined at any mental health clinic, or previously received any psychiatric treatment. He stated that subsequent to the incidents here in question he, at the urging of his girl friend, arranged for an appointment at the Mental Health Center of Altoona Hospital to be held on October 15, 1980, but that his arrest and incarceration on October 13 prevented said appointment.[1] Defendant's allegation of his need for psychiatric examination stems from a personal altercation occurring in March or April of 1980 during which he was struck on the head with a brick, as a result of which he was hospitalized for eight or nine days and treated by Dr. Osgood, a neurosurgeon, who saw him four or five times in his office following defendant's hospital discharge before releasing defendant from his care in October of 1980.

The incidents for which defendant currently stands criminally charged involve matters of vio-

---

1. Neither the girl friend nor any official of the Center was called to confirm the appointment.

lence against the person, allegations that on the evening of October 3, 1980 he assaulted, threatened, endangered, restrained and harassed a woman by holding a knife to her throat and that later the same night he assaulted and harassed a man with his fist. He would have us believe that the injury resulting from the altercation of a year ago brought about headaches and caused him to become violent when drinking,[2] a condition from which he did not suffer and a temperament which he did not exhibit prior to the aforesaid head injury, the inference being that the ultimate consequence of both or either is spells during which he cannot remember what he is doing or has done.

He testified, however, that he did remember the woman visiting his home on the evening in question, that he did recall parts of the incident and that, although he was not able to discuss the details of the incident with his counsel, he understands both the nature of the charges and their seriousness; defendant also acknowledged that he is able to distinguish between what is right and what is wrong. These latter statements made under oath are in direct contradiction to the averments of his petition.

If the basis for the requested evaluation is that since the brick episode defendant's conduct has changed or that his pattern of behavior has been altered by some mental or emotional problem emerging as a consequence thereof, we are unable to accept this contention. Defendant is fairly well known by law enforcement officials in the City of Altoona and is not an unfamiliar face before the

---

2. This is the only statement introducing drinking into this case, an involvement not apparent from the face of either the original complaint, the information or elsewhere in the record.

criminal courts of Blair County over the past ten years, having at various times entered pleas of guilty to bad check, burglary, receiving stolen goods and escape charges. While none of these offenses directly involve personal violence, they are nonetheless serious crimes; moreover, the very incident which defendant would offer as that subsequent to which his behavior has altered was of itself an episode of such violence. The charges currently outstanding against him are, therefore, not at all uncharacteristic of or inapposite to any prior status enjoyed by defendant as a peaceable and law-abiding citizen.

The only possible ground remaining for the requested evaluation, therefore, is that defendant has no detailed recollection of the alleged incidents of which he stands charged. In refusing the grant of a writ of habeas corpus, and thereby rejecting the petitioner's assertion that he was incompetent at the time of trial, the Federal district court observed in United States ex rel. Johnson v. Brierley, 334 F.Supp. 661, 662 (E.D. Pa. 1971):

"The test for mental competency to stand trial is whether the defendant understands the proceedings against him and is able to assist in his own defense: Commonwealth v. Novak, 395 Pa. 199, 205, 150 A. 2d 102 (1959); Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed. 2d 824 (1960). Competency is presumed and the burden is on the petitioner to establish his incompetency.

"Petitioner's only evidence in this regard was his own testimony. In summary he said that he had attended a school for retarded children, had been tested for 'mental problems' by a Philadelphia children's hospital, was barely able to read, and unable to do much writing. He stated that he understood

that he had a low IQ. In addition, he testified that at the time of trial he did not comprehend the serious nature of the charges against him. . . . He also said that he did not think he was able to communicate with his lawyers during the trial, although he imagined that he did his best to answer their questions. Consistent with his testimony at trial, *he also maintained that he could not remember the events of the crime he was charged with committing.* He said that he did not understand what was going on in the court room. However, petitioner's low intelligence level *does not establish incompetency:* [citations omitted]; *neither does his inability to remember the details of the crime.* The latter is a frequent defense: Commonwealth v. Rightnour, 435 Pa. 104, 108, 253 A. 2d 644 (1969); Commonwealth v. Reid, 432 Pa. 319, 247 A. 2d 783 (1968); Commonwealth ex rel. Cummins v. Price, 421 Pa. 396, 401, 218 A. 2d 758 (1966); Commonwealth v. Lance, 381 Pa. 293, 295, 113 A. 2d 290 (1955); and Commonwealth v. Heller, 369 Pa. 457, 460, 87 A. 2d 287 (1952)." (Emphasis supplied.)

We note with interest the considered and comprehending manner in which defendant responded to the questions asked of him at hearing, particularly those propounded on cross-examination by the district attorney; while this third dimensional aspect of defendant's testimony may not appear from a black and white transcript, it is nonetheless a factor invaluable to our assessment of his credibility.

There is not an iota of evidence in this record to cause this court either to doubt the mental competency of defendant or to suspect that a psychiatric evaluation might be needful to his defense.

Accordingly, we enter the following

## ORDER

And now, March 30, 1981 the defense motion for a psychiatric evaluation and/or competency examination is denied and refused.